KENNETH J. RIDER AND NAN RIDER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Rider v. Commissioner
Docket No. 36794-86.
United States Tax Court
T.C. Memo 1988-288; 1988 Tax Ct. Memo LEXIS 313; 55 T.C.M. (CCH) 1200; T.C.M. (RIA) 88288; June 29, 1988
Louis Melbin Zavac, for the petitioners. Margaret A. Satko, for the respondent. DINAN
MEMORANDUM OPINION DINAN, Special Trial Judge: This case was assigned pursuant to the provisions of section 7443A(b) of the Internal Revenue Code of 1986 and Rules 180, 181 and 182. [1] For convenience, the findings of fact and conclusions of law have been combined in this opinion. Respondent determined deficiencies in petitioners' Federal income taxes in the amounts *315 of $ 907.00 for the taxable year 1982 and $ 2,658.00 for the taxable year 1983. Petitioners, prior to trial, conceded issues regarding a charitable contribution and excessive depreciation [2] on certain farm equipment. Accordingly, the only issues left for determination are (1) whether petitioners' farming activity constituted an activity not engaged in for profit within the meaning of section 183 and (2) whether petitioners are entitled to deduct certain traveling expenses as employee business expenses. Some of the facts have been stipulated and are so found. The stipulations of fact and exhibits attached thereto are incorporated herein by this reference. Petitioners resided in rural Deshler, Ohio, at the time their petition was filed in this case. Petitioner [3] was employed by Eastern Airlines, Inc., during the taxable years in issue as a commercial pilot. He *316 had been so employed for 15 years prior to the years in issue. Petitioner earned wages as a commercial pilot in the amounts of $ 54,310.82 for 1982 and $ 61,884.02 for 1983, as shown by his W-2 wage and tax statements for those years. Petitioner's point of origination for his Eastern Airlines flights was New York's LaGuardia Airport. His duties as a pilot lasted approximately 48 hours at a time. That does not include the time it took to commute to New York from his residence in rural Deshler, Ohio. Petitioner owned and operated a 27 acre farm during the taxable years in issue. The farm was located in rural Deshler, Ohio. Petitioners did not actually live on the farm property; they lived in a rental house close to the farm property. Petitioner bought the 27 acre tract in 1974. Petitioner personally operated the farm. He engaged in all aspects of growing crops. The only activity he hired out was harvesting because he did not own a combine. He cleared brush and maintained the drainage ditches on his farm property. He serviced and maintained his own machinery. He also stored grain. He *317 did not hire any outside consultants to advise him on farming. Petitioner sold his grain himself. He kept himself abreast of developments in the farm markets. Petitioner, although knowledgeable in farming, enlisted the help of various government agencies in managing his farming operation. These included the local county extension agencies, the Agricultural Stabilization and Conservation Service (ASCS) and the Soil Conservation Service. Petitioner also read several trade publications to help learn more about farming. Petitioner was not raised on a farm but did farm labor as a child. He also worked in his father's alfalfa mill as a child. Petitioner Nan Rider was raised on a farm. She assisted her father on their farm as a youth. Her father still actively farms. Petitioner maintained his own books and records using the double entry system provided by the Ohio State University Record Guide. Petitioner testified that most of his neighbors who farmed also worked off the farm to help meet farm expenses. Petitioners have never realized a profit from their farming activity up to and including the taxable years in issue. However, petitioner believes that once the debt *318 is retired on the property he will realize a profit from his farming operation. A preliminary matter must be disposed of before we decide the issues in this case. Petitioners reported a farming loss of $ 6,778 on Schedule F of their 1982 tax return. However, that loss was not carried forward to line 19 of their Form 1040. Consequently, the loss was not deducted from gross income in that year. As a result, respondent did not make any adjustments regarding the farming loss for 1982 except that respondent did allow a portion of the amount claimed on Schedule F as an interest expense deduction. Tax Court jurisdiction exists in a case only if there has been issued a valid statutory notice of deficiency and a timely petition has been filed therefrom. Logan v. Commissioner,86 T.C. 1222, 1226 (1986); sections 6212 and 6213. However, once those events occur, the Tax Court has jurisdiction "to decide the entire gamut of possible issues that controlled the determination of the amount of the liability for the year in question." Russell v. United States,592 F.2d 1069, 1072 (9th Cir. 1979), cert. denied 444 U.S. 946 (1979). This includes *319 the jurisdiction to decide whether there was an overpayment in tax. Section 6212(b). Therefore, we have the jurisdiction to decide whether petitioners can claim a farming loss for the taxable year 1982 since that year has properly been put in issue. Furthermore, since respondent agreed that the farming loss was in issue we find that it was tried by consent. Rule 41(b) (1). The first issue we must decide is whether petitioners' farming activity during the years in issue constituted, under section 183, an "activity not engaged in for profit." Section 183 provides that, except as otherwise provided for in that section, taxpayers will not be allowed deductions incurred in an activity "not engaged in for profit." The losses claimed by petitioners are therefore allowable in full only if petitioners'' motivation in investing in the farm was to make a profit. Whether an activity is engaged in for profit turns on whether the taxpayer has a bona fide objective of making a profit. Dreicer v. Commissioner,78 T.C. 642 (1982), affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983); Engdahl v. Commissioner,72 T.C. 659 (1979). The taxpayer's objective *320 is a question of fact to be determined from all the facts and circumstances in the record. Allen v. Commissioner,72 T.C. 28 (1979). The burden of proof is on the taxpayer with greater weight given to objective facts than to the taxpayer's mere statement of intent. Engdahl v. Commissioner, supra; sec. 1.183-2(a), Income Tax Regs.
The regulations under section 183 list the following nine factors which should normally be taken into account in determining whether an activity is engaged in for profit: (1) the manner in which the taxpayer carries on the activity; (2) the expertise of the taxpayer or his advisors; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that the assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or losses with respect to the activity; (7) the amount of occasional profits if any, that are earned; (8) the financial status of the taxpayer; and (9) the elements of personal pleasure or recreation involved in the activity. Section 1.183-2(b), Income Tax Regs.
*321 These factors are not exclusive and are to be applied according to the unique facts of each case. Section 1.183-2(b), Income Tax Regs. Accordingly, no one factor, nor a majority of the nine factors, need be considered to be determinative. Golanty v. Commissioner,72 T.C. 411, 426-427 (1979), affd. in an unpublished opinion 647 F.2d 170 (9th Cir. 1981). In this case petitioner received a good salary as a pilot. His farming activity never operated at a profit. Nevertheless, we find that petitioner had an honest profit objective in his farming operation. Petitioner suffered real losses from an activity on which he expended much time and labor. Petitioner was more than just a weekend farmer. He did most of the farm labor himself with only the help of his family. The only work he did not do himself was the harvesting and that was only because he did not own a combine. He sought the advice of knowledgeable government agriculture agencies. He kept himself abreast of current developments in the farm markets. Petitioner believes that once the debt on the land is retired he will realize a profit. Petitioner honestly tried to cut costs to make his *322 farm more profitable. The fact that he has not yet realized a profit does not necessarily mean that if he continues to work hard and cuts costs, he will not earn a profit in the future. In addition, the fact that he spent nearly as much time farming as he did flying as a commercial pilot persuades us that he was in farming to make money. Accordingly, petitioner's farming losses are deductible expenses for the years in issue. [4]
The next issue we must decide is whether petitioner is entitled to deduct expenses incurred while traveling between his farm in rural Deshler, Ohio and New York's LaGuardia Airport, his point of origination as a pilot for Eastern Airlines. Section 162 allows -- as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including * * * (2) travel expenses (including amounts expended for meals and lodging other than amounts which are lavish or extravagent under the circumstances) while away from home in the pursuit of a trade or business * * *.
Section 162(a) (2). Section *323 262 precludes a deduction for personal, living, or family expenses not otherwise allowed. It is well settled that a taxpayer's cost of commuting to his place of work are nondeductible personal expenses. Commissioner v. Flowers,326 U.S. 465 (1946); section 1.162-2(e), Income Tax Regs. The Supreme Court in Flowers prescribed three conditions which must be satisfied before a traveling expense deduction will be allowed under section 162 (a) (2): the expense must be (1) reasonable and necessary, (2) incurred "while away from home," and (3) incurred in pursuit of business. Commissioner v. Flowers, supra at 470. To be incurred in the pursuit of business, the traveling expenses must bear a direct relationship to the prosecution of the trade or business of the taxpayer or his employer, and cannot result from the taxpayer's personal propensities. Commissioner v. Flowers, supra.
Petitioner has the burden of proving that the claimed expenses satisfy all three requirements. United States v. Woodall,255 F.2d 370 (10th Cir. 1958), cert. denied 358 U.S. 824 (1958). As a general rule "home" as used in section *324 162(a) (2) means the vicinity of the taxpayer's principal place of employment and not where his or her personal residence is located. Mitchell v. Commissioner,74 T.C. 578, 581 (1980); see also Horton v. Commissioner,86 T.C. 589, 593 (1986). The Sixth Circuit [5] in Markey v. Commissioner,490 F.2d 1249, 1255 (6th Cir. 1974), stated that an objective standard taking into account the following three elements is dispositive of the issue of a taxpayer's "tax home" when a taxpayer has two places of employment at considerable distances from each other. The elements are: 1. The place where he spends most of the time; 2. The place where he engages in greater business activity; and 3. The place where he derives a greater proportion of his income.
Markey was cited with approval in Montgomery v. Commissioner,532 F.2d 1088, 1090 (6th Cir. 1976). *325 After reviewing the record in this case, and for the reasons stated below, we are convinced that petitioner's tax home is New York City. [6]
Petitioner split his time between New York and rural Deshler, Ohio. He testified that he spent approximately fifteen days on each activity during a typical month. Therefore the first element of Markey doesn't sway us either way. However, the remaining two elements clearly demonstrate that petitioner's principal place of business was New York City. Petitioner earned all of his "net" income (i.e., income less expenses) from his commercial pilot job with Eastern Airlines. Without it he would not have earned a living. Merely because we have found that petitioner had a farming business does not indicate that it was his primary or main business. It simply was not. Petitioner would have been unable to engage in farming without his job at Eastern. In other words, his farming business was dependent on his job as a pilot from an economic standpoint. Consequently, *326 petitioner cannot deduct travel expenses incurred while traveling to New York because he was not traveling "away from home" within the meaning of section 162(a) (2) and Commissioner v. Flowers, supra.[7]
This does not end our analysis on the travel expense issue however. We have found that petitioner's tax home for purposes of section 162 (a) (2) is New York City. We have also found that petitioners engaged in the activity of farming for profit in rural Deshler, Ohio. Petitioner traveled between the two. An argument could be made that petitioner was traveling from his tax home (i.e., New York City) to a place of business away from home (i.e., his farm operation in rural Deshler, Ohio); and, therefore, since he was traveling away from home in pursuit of business his traveling expenses should be deductible. Thus, we must decide if petitioner traveled to rural Deshler, Ohio primarily to work on his farming operation or whether he traveled there primarily to be at home in the popular sense of the word. Section *327 1.162-2, Income Tax Regs.
It is true that petitioner spent a lot of time working on his farm while he was in Ohio. His farm was a legitimate profit activity. Nevertheless, we are persuaded that petitioner's primary purpose in traveling to Ohio was to be at home in the popular sense of the word. It was his residence. Petitioner enjoyed living there. He thought it was a good place to raise children. We believe he would have traveled home even if he didn't have farm work to do. For those reasons we find that petitioner may not deduct travel expenses incurred when traveling from New York City to rural Deshler, Ohio because the expenses are personal commuting expenses and not expenses incurred "in the pursuit of business," Commissioner v. Flowers, supra; Mazzotta v. Commissioner,57 T.C. 427 (1971), affd. in open court 467 F.2d 943 (2d Cir., Oct. 11, 1972), and per curiam 465 F.2d 1399 (2d Cir., Oct. 16, 1972). [8]
*328 Decision will be entered under Rule 155.
Footnotes
1. All subsequent section references are to the Internal Revenue Code of 1954, as amended and in effect for the years in issue, unless otherwise indicated. All Rule references are to the Tax Court Rules of Practice and Procedure. ↩
2. The parties had a dispute as to the amount of depreciation taken and the salvage value of the property depreciated. The parties informed the Court at trial that they had reached an agreement on those issues. We leave it to the parties to include their agreed figures in their Rule 155 computations. ↩
3. Unless indicated otherwise, "petitioner" shall refer to Kenneth Rider only. ↩
4. This does not include excess depreciation conceded by petitioner for both taxable years. ↩
5. Barring stipulation to the contrary, this case is appealable to the Sixth Circuit Court of Appeals. Section 7482. Consequently we are bound by determinations made by the Sixth Circuit. Golsen v. Commissioner,54 T.C. 742 (1970), affd. 445 F.2d 985 (10th Cir. 1971), cert. denied 404 U.S. 940↩ (1971). 6. The fact that petitioner has a different tax home from his wife is not relevant in our determination. Foote v. Commissioner,67 T.C. 1, 4↩ (1976). 7. In accord, Bernard v. United States, 11 C1. Ct. 437 (1986); McKenzie v. United States,431 F.Supp. 993↩ (E.D. Tenn. 1976). 8. In accord, King v. Commissioner,T.C. Memo. 1980-373; Fisher v. Commissioner,T.C. Memo 1979-191; Andrews v. Commissioner,T.C. Memo. 1978-135; Dean v. Commissioner,T.C. Memo. 1976-379; Preseault v. Commissioner,T.C. Memo. 1975-146↩.